ALBERT STANTON *v.* THOS. J. SHAW, *et al.*

FRAUDULENT CONVEYANCE OF REAL ESTATE. *Rights of creditors.* Where the purchaser of real estate fraudulently procures the title to be made to a third person to hinder and delay his creditors, the creditors of such third person may subject the same to his debts while the title remains in him, yet, if the proceedings against him be not had before his reconveyance of the property to the true purchaser and owner, it cannot be reached in satisfaction of debts by his creditors.

Case cited: T. B. Monroe, 584–5.

FROM PUTNAM.

Appeal from the Chancery Court. B. M. TILLMAN, Chancellor.

J. P. and G. B. MURRAY, EDWARD H. EAST and J. W. MCHENRY for Stanton.

A. A. SWOPE and COLMS for Shaw *et al.*

DEADERICK, J., delivered the opinion of the Court.

The bill in this case was filed in the Chancery Court at Cookville, on the 26th of December, 1865.

It alleges that complainant became the surety of Jos. Shaw in October, 1860, and, as such, was forced to pay about $987 on the 15th of December, 1865; that in 1858, Jos. Shaw was the owner of a grocery store and house and lot in Cookeville, and put his father and mother in the occupation thereof; and he owned other lots and lands in Cookeville and in Putnam County; that he fraudulently conveyed the grocery-house and lot to his father, T. J. Shaw, by deed, bearing date September 18, 1861.

It is unnecessary to notice the allegations as to other property, as the controversy seems to be confined to the question of title to the grocery-house and lot, purchased of Dillard, and conveyed by him by deed to Jos. Shaw, and conveyed by Jos. Shaw to his father, T. J. Shaw, by deed dated 18th of September, 1861.

Jos. Shaw died in 1864, and the bill seeks to set aside the conveyance to T. J. Shaw, and subject the house and lot to the payment of the amount complainant was compelled to pay as surety of Jos. Shaw.

Mahala Shaw, wife of T. J. Shaw, in July, 1865, filed a bill against her husband for divorce and almony, in which case the house and lot was attached, and a decree rendered in her favor, granting a divorce, and divesting title to the house and lot out of T. J. Shaw and vesting it in her. She and her husband, and the administrator, widow and heirs of Jos. Shaw are made parties. T. J. and Mahala Shaw answer the bill seperately, and deny the allegations in the bill, and insist that the grocery-house and lot, and stock of

groceries were not bought by Jos. Shaw for himself, and that he never paid one dollar for either. T. J. Shaw states he was embarrassed, and procured his son Joseph to allow him to use his name in buying the house and the stock of groceries in it, but that he paid the purchase money for both, and having succeeded in making money, and in paying his old debts, he could hold the property in his own name, and Joseph re-conveyed to him, because he did not desire to hold in his own right, but in trust for him, T. J. That before he conveyed to him, in September, 1861, and before he, T. J., had freed himself from the embarrassment of his old debts, he and Joseph often spoke of the house and lot, and the stock of groceries, as belonging to Joseph, for the purpose of protecting the property against the creditors of T. J., but, in fact, Joseph never paid one dollar towards the price of it.

Mahala Shaw's answer is the same substantially, except that she claims to have paid the first payment of $300 on the house and lot, of her own means. The evidence is very voluminous, and establishes numerous contradictory statements by both T. J. and Joseph Shaw as to the ownership of the property, and as to the way in which it was paid for. These statements seemed to have been made mostly anterior to the conveyance of Joseph to his father, but some by Joseph afterwards, and some by T. J. after he filed his answer, but these were afterwards contradicted by himself under oath, and the truth of the statement in his answer re-affirmed.

Our conclusions upon the testimony are, that the house and lot, and stock of groceries were purchased by Joseph in his own name, to avoid its being seized by the creditors of T. J., but that T. J. paid the price of the property, and so Joseph paid no part of the purchase money. It is true, it appears, that Joseph was unembarrassed, and in good circumstances, and T. J. was embarrassed, and had but little property. Yet it is shown that he removed from Louisiana to Putnam County in 1858, and while in Nashville, on the way, he purchased a small stock of groceries, which he had directed to his son Joseph, and these, and the stock purchased of Laycock, who occupied the grocery store when it was bought, comprised, probably, the whole stock upon which T. J. began business, and under whose management it was conducted. As before stated, the proof shows that Joseph had valuable property and good credit, and it does not appear that he owed any debt except the one on which complainant was surety, and there is no fact shown to warrant any suspicion that he was not abundantly able to discharge his debts up to the time of his conveyance of the 18th of September, 1861, to his father, and afterwards, though it does appear that in 1865 his estate was insolvent. Nor is there any ground to support the conclusion that the conveyance was made to his father with any fraudulent intent.

We are of opinion that the conveyance was made in pursuance of the understanding and agreement of the parties at the time the property was purchased.

Assuming that T. J. Shaw paid the purchase money, and fraudulently procured the title to be made to his son Joseph to hinder and delay his creditors, and that the creditors of Joseph might, while the title remained in him, have subjected the property to the payment of his debts; yet, before any proceeding against him by his creditors, he reconveyed to his father, having done that which in good conscience he ought to have done, his creditors cannot reach the property.   T. B. Monroe, 584–5.

The Chancellor dismissed the bill, and we affirm his decree.   The costs of this Court will be paid by complainant, and the costs of the Court below as adjudged by the Chancellor.